Opinion filed November 5, 2009











 
 
  
 
 




Opinion filed November
5, 2009




 
 
 
  
 
 
 




 

 

 

 

 

 

In The

 

Eleventh Court of
Appeals

____________

 

No. 11-08-00119-CR

 __________

 

CHARLES DON THREET, Appellant

 

V.

 

STATE OF TEXAS, Appellee

 



 

On Appeal from the 35th District Court

 

Brown County, Texas

 

Trial Court Cause No. CR17050

 



 

M
E M O R A N D U M   O P I N I O N








The
trial court convicted Charles Don Threet of theft of livestock and assessed his
punishment at confinement for ten years and a $10,000 fine.  However,
imposition of the sentence was suspended, and Threet was placed on community
supervision for ten years.  Threet raises one issue on appeal, contending that
the evidence supporting his conviction is factually insufficient.[1] 
We affirm.  

Standard
of Review

To
determine if the evidence is factually sufficient, we must review all the
evidence in a neutral light and determine whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006).

Factual
Sufficiency Analysis

To
commit the offense of theft, a person must unlawfully appropriate property 
with the intent to deprive the owner of the property.  Tex. Penal Code Ann. '
31.03(a) (Vernon Supp. 2009).  Appropriation of property is unlawful when it is
done without the effective consent of the owner.  Id. at (b).  Consent
is not effective if induced by deception.  Id. at (a).    

On
appeal, Threet claims he had the effective consent of Jordan Cattle Auction
and, therefore, cannot be guilty of theft of cattle.  The evidence supports the
trial court=s decision
that Threet lacked consent because he used deception to take the livestock from
Jordan Cattle Auction. 

Jordan
Cattle Auction=s
office manager, Brenda May, testified that Threet represented at three separate
auctions run by Jordan Cattle Auction that he was purchasing cattle for Joe Don
Pogue.  Pogue had order-buyer status.  Order buyers could defer payment up to a
week after the auction, but all other buyers were required to pay on the day of
the auction.  May testified that, if she had known Threet was purchasing cattle
for himself rather than Pogue, he would have been expected to pay the day of
the auction and his check verified before the cattle exchanged hands.








Pogue
had frequently used Threet as a purchasing agent at Jordan Cattle Auction in
the past.  Everyone at Jordan Cattle Auction relied on this past relationship
and assumed that Threet was truthful about purchasing cattle for Pogue.  Pogue
had previously notified Jordan Cattle Auction that Threet was not to purchase
any more cattle for him, but Jordan Cattle Auction assumed this was only a
temporary situation.  May testified that the transaction became unusual when
Threet=s payment
arrived a week after the auction.  When Threet purchased cattle for Pogue, they
had always received a check drawn on Pogue=s
corporate account.  This time, however, the check was drawn on the account of
Jesse Threet, Charles Threet=s
son.  That check failed to clear because of insufficient funds.

Ken
Jordan, the owner of Jordan Cattle Auction, testified about their attempts to
collect payment from Threet.  Jordan contacted Pogue and was informed that
Pogue was not involved with the transaction.  Jordan contacted Threet.  Threet
was evasive but promised to pay for the cattle.  At no time did Threet indicate
that Pogue was involved with the transaction.  Threet never paid for the
cattle, never returned the cattle, or made any other attempt to satisfy his
obligation.

Texas
Ranger Joey Gordon testified that he conducted an investigation and discovered
that five cattle auctions, each in separate counties, had similar complaints
against Threet.  Threet had made five cattle purchases within a two-week span
and had paid with hot checks at each auction. Prior to trial, Threet pleaded
guilty to theft of livestock in two of these counties.     

Threet
testified in his own defense that Jordan Cattle Auction extended him credit for
the auction purchase.  He testified that he and his son never paid for the
cattle the same day they picked them up but would always pay a week later.  He
claims this arrangement started while working as an agent for Pogue but that
Jordan Cattle Auction Ajust
kind of translated that on down and never changed.@  Threet also testified that his son picked up
and paid for cattle at Threet=s
direction.  Threet admitted that he pleaded guilty in the two other counties.

After
reviewing the evidence in a neutral light, the trial court=s determination that Threet
unlawfully appropriated property with the intent to deprive Jordan Cattle
Auction of the property is not against the great weight of the evidence, and
the evidence is not so weak to make the determination clearly wrong or
unjust.   Here, the trial court was the trier of the facts and was free to
determine the weight and credibility of the testimony.  Garrett v. State,
619 S.W.2d 172, 174 (Tex. Crim. App. 1981).  The trial court could reasonably
disbelieve Threet=s
claim that Jordan Cattle Auction effectively consented to him taking the cattle
by extending him credit.   There was ample evidence that Threet induced the
sale by deception by lying about purchasing cattle on Pogue=s behalf.  Accordingly, we
overrule Threet=s sole
issue.    








Conclusion

The
judgment of the trial court is affirmed. 

 

 

RICK STRANGE

JUSTICE

 

November 5, 2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.









[1]We note that the State analyzed legal sufficiency in
its brief, but Threet did not address it in his brief.  Therefore, neither will
we.